IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION      2010 JUN -3 AM 9:55

CATHERINE ELAINE MASON,     )
                            )     CIVIL ACTION NO.: CV209-085
            Plaintiff,      )
                            )
    v.                      )
                            )
MICHAEL J. ASTRUE,          )
Commissioner of Social Security, )
                            )
            Defendant.      )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Catherine Elaine Mason ("Plaintiff") filed an application for a Period of Disability and Disability Insurance benefits ("DIB") claiming she became disabled on December 13, 2004. (R. 97). This claim was denied initially. Plaintiff filed a timely written request for hearing, and Administrative Law Judge Donald B. Fishman ("ALJ") held a hearing at which Plaintiff appeared and testified. The ALJ found that, as of the date last insured, December 31, 2005, Plaintiff was not disabled within the meaning of the Social Security Act, and therefore, was not eligible for disability insurance benefits. (R. 12-24). Plaintiff's request of review was denied by the Appeals Council and the decision of the ALJ became the final decision of the Commissioner for judicial review. (R. 1-3).

Plaintiff then filed this complaint, asserting that the ALJ's determination was not supported by substantial evidence. (Doc. No. 1, p. 2). Plaintiff urges the Court to reverse the ALJ's decision and to enter an award establishing that Plaintiff was disabled

prior to December 31, 2005, or in the alternative, to remand the case for proper determination on the evidence. (Doc. No. 16, p. 28).

## ALJ'S FINDINGS

For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she was insured. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); 42 U.S.C. § 423(a)(1)(A). A person demonstrates a disability when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Pursuant to the Act, the Commissioner employs a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step looks at work activity. If the claimant was involved in "substantial gainful activity," then they are not considered disabled and benefits are denied. Yuckert, 482 U.S. at 140. If there is no substantial gainful activity, the ALJ moves on to the second step and must determine if the claimant has a medically severe impairment or combination of impairments. Id. at 140-141. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. Id. at 141. If the "severe" criteria is met, then the evaluation proceeds to step three. The third step requires determination of whether the claimant's impairment or combination of impairments meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, subpt. P. App.

1; Yuckert, 482 U.S. at 141. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. Yuckert, 482 U.S. at 141. If the impairment does not meet or equal one of the acknowledged impairments, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work that the claimant has performed in the past. Id. If the claimant is unable to perform her previous work, the next step of the evaluation is completed by determining whether the claimant is able to work in the national economy, considering age, education, and work experience. Id. at 142. Disability benefits will be awarded only if the claimant is unable to perform other work. Id.

In the instant case, the ALJ followed the five-step sequential process and first determined that Plaintiff did not engage in substantial gainful activity through the last date insured. (R. 17). At the second step, the ALJ determined that Plaintiff had a severe combination of impairments including rheumatoid arthritis versus fibromyalgia, osteoarthritis, recurrent bronchitis, and chronic obstructive pulmonary disease. (Id.). At the third step the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the Code of Federal Regulations as Plaintiff suffered only "mild" restrictions in her activities and no difficulties in maintaining social functioning. (R. 19). The ALJ determined that Plaintiff could lift fifteen pounds occasionally, lift ten pounds frequently, sit for thirty to forty-five minutes continuously for six total hours, walk two miles, and stand for two hours continuously. Plaintiff was found to be limited in that she needed to avoid ladders, ropes, exposure to fumes, airborne particulates, and should work in a controlled

environment. (Id.). At step four, the ALJ determined that Plaintiff was not precluded form performing past relevant work including office manager, health unit clerk, or general office clerk. (R. 24).

## ISSUES PRESENTED

Plaintiff contends that the ALJ's determination is not supported by substantial evidence. Plaintiff further alleges that the ALJ erred by: 1) improperly discounting the opinions of Dr. Robert Pumpelly, Plaintiff's long term treating physician, and of Dr. Charles Galea, Plaintiff's rheumatologist; 2) improperly attempting to contact Dr. Galea; and 3) failing to recognize Plaintiff's persistent effort to obtain relief as enhancing her credibility.

## STANDARD OF REVIEW

The judicial review of social security disability cases is a limited standard of review in which the court will not decide facts anew, make credibility determinations, or re-weigh the evidence. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). The court will simply review whether the Commissioner's decisions are supported by "substantial evidence," and whether the correct legal standards were applied. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Even if the evidence preponderates against the Commissioner's findings, [the court] must affirm if the decision reached is supported by substantial evidence." Martin, 894 F.2d at 1529.

## DISCUSSION AND CITATION TO AUTHORITY

1. **ALJ's Consideration of Plaintiff's Treating Physicians' Opinions.**

Plaintiff asserts that the ALJ's determination is not supported by substantial evidence. Plaintiff claims that the ALJ improperly discounted the opinions of both Dr. Robert Pumpelly and Dr. Charles Galea. Plaintiff asserts that there was no valid reason given for discounting the opinion of Dr. Pumpelly and the reasons given for discounting the opinion of Dr. Galea were without merit and were improper.

The Eleventh Circuit has held that a treating physician's opinion is entitled to substantial weight unless "good cause" is shown. Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991). Good cause for not adopting a treating physician's opinion exists when the medical opinion is conclusory, or is unsupported by objective medical findings or substantial evidence from the record. Lewis, 125 F.3d at 1440; Edwards, 580, F.2d at 583. "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir.1986).

In December 2006, nearly one year after the date when Plaintiff was last insured, Dr. Galea completed a Medical Source Statement. (R. 382-385). In that statement, Dr. Galea opined that claimant could lift or carry less than ten pounds both occasionally and frequently, could stand or walk less than two hours in an eight-hour workday, and could sit less than six hours in an eight-hour workday. (R. 383). Dr. Galea also opined that Plaintiff's abilities to push and pull were limited in both upper and lower extremities, and that Plaintiff could occasionally balance or stoop, but could never climb, kneel, crouch, or crawl. (R. 383-384). Plaintiff was reportedly able to reach

constantly, handle constantly, finger frequently, and feel occasionally. (R. 384). Dr. Galea reported that Plaintiff should avoid all exposure to hazards, moderate exposure to extreme cold, and should avoid concentrated exposure to extreme heat, wetness, humidity, noise, and gases. (R. 385). Dr. Galea also thought that Plaintiff needed to miss work more than three times a month. (R. 390). The ALJ noted in his hearing decision that Dr. Galea had completed this Medical Source Statement opining that Plaintiff's disabling condition existed prior to the date she was last insured, even though Dr. Galea had not seen Plaintiff prior to that date. (R. 22). The ALJ then concluded that Dr. Galea's opinion was inconsistent with his own notes and with the evidence in the record, including Plaintiff's actions and abilities; thus, the ALJ made the decision to discount the opinion. Specifically, the ALJ noted that immediately preceding Plaintiff's cessation of work and the selling of her restaurant in December 2004, Plaintiff worked fourteen to nineteen hours per day. (R. 34, 141-142, 154). The ALJ also noted the Plaintiff's reports that in January 2005, she performed calisthenics regularly, (R. 215), and in September 2005, she could walk two to three miles per day. (R. 217).

The ALJ further supported the decision to discount Dr. Galea's opinion by indicating that Dr. Galea's notes were inconsistent with the opinion that Plaintiff was disabled. The ALJ pointed to notes of Dr. Galea stating that as of April 6, 2007, Plaintiff was "doing quite well," (R. 441) and that Plaintiff was "overall doing fine" on September 14, 2007. (R. 439). Also, on March 7, 2006 Dr. Galea reported that "Plaintiff had Rheumatoid Arthritis by history but no objective synovitis" (R. 332).

Dr. Galea opined that Plaintiff had rheumatoid arthritis, and was thus disabled, when being seen by Dr. Boswell prior to the date she was last insured. However, as

noted by the ALJ, Dr. Boswell's records do not support this conclusion. Dr. Boswell's records indicate only "a little bit of swelling of the DIPs, PIPs, and MCPs," (R. 338) which resolved within a week, (R. 344) and a flare up in her joints, (R. 345) which resolved within sixteen days. (R. 348). Dr. Boswell's October 31, 2005 report shows plaintiff did not suffer from hot, swollen, tender, or deformed joints. (R. 222). The ALJ also noted a December 12, 2005 report from Dr. Pumpelly stating that Dr. Boswell informed Plaintiff that he believed Plaintiff had fibromyalgia, did not have rheumatoid arthritis, and had no evidence of connective tissue disease. (R. 241).

The ALJ further noted test results that were inconsistent with Dr. Galea's opinion specifically pointing to Dr. Pumpelly's report on February 27, 2006, which shows that Plaintiff had a normal sedimentation rate of seven and a normal rheumatoid arthritis level of 9.1, as well as normal CCP/IgG of thirteen, normal Anti-SSA, and normal Anti-B. (R. 239, 285). On March 31, 2006, Plaintiff once again tested normal for sedimentation rate. (R. 602). On June 30, 2006 a Lupus Panel conducted on Plaintiff was normal. (R. 365). Also on June 30, 2006, Plaintiff's sedimentation rate (Westergren) was normal at seven as well as an Inflammatory-CRP test which was normal at 1.1. (R. 601). Plaintiff's sedimentation rate continued to test normal in November 2006 (R. 339), May 2007 (R. 594), July 2007 (R. 592), and September 2007 (R. 579).

The Plaintiff contends that the ALJ failed to properly refute Dr. Galea's opinion and that the opinion should be "accepted as true as a matter of law." (Doc. No 16, p. 21). However, the ALJ provided valid reasons for refuting Dr. Galea's opinion as his disability determination was not supported by substantial evidence in the record. Based on the evidence in the record, the ALJ found Dr. Galea's opinion to be inconsistent with

his own notes and with the evidence in the record. In making this decision the ALJ noted inconsistencies between Dr. Galea's opinion and test results, Plaintiff's self-reported activities, Dr. Galea's own notes, and Dr. Boswell's reports. The ALJ also noted that Dr. Galea had not seen Plaintiff prior to the date she was last insured.

Plaintiff additionally argues that the ALJ is not permitted to reject only the part of Dr. Galea's assessment that would lead to a finding that she was disabled. (Doc. No. 16, p. 127). The ALJ is not permitted to pick only the evidence that will support one conclusion. Tienbert v. Heckler, 720 F.2d 1251 (11th Cir. 1983). The ALJ, however, is obligated to evaluate every medical opinion that is submitted to determine what weight the assessment is entitled. 20 C.F.R. § 404.1527. Here the ALJ discounted the portions of Dr. Galea's assessment that were not consistent with the evidence in the record. (R. 22-23). Plaintiff has failed to show any error, as the ALJ was merely following the regulatory requirements for assessing a treating physician's opinion; his analysis was consistent with applicable Eleventh Circuit authority. See Edwards, 937 F.2d at 583. Plaintiff has failed to establish that the ALJ improperly evaluated Dr. Galea's opinion.

Plaintiff further contends that the opinion of Dr. Robert Pumpelly was improperly discounted and should be accepted as true as a matter of law. (Doc. No. 16. p. 26). In the hearing decision, the ALJ acknowledges the Medical Source Statement completed by Dr. Pumpelly on December 20, 2006. (R. 386-390). In that statement, Dr. Pumpelly opined that Plaintiff would not have to lie down or elevate her legs to waist level throughout a work shift, could carry ten pounds occasionally and less than ten pounds frequently, and could stand for less than two hours and sit less than six hours in an

eight hour workday. (R. 386-387). Dr. Pumpelly also claimed that Plaintiff was limited in her ability to push or pull in both upper and lower extremities and was limited to never being able to climb, balance, kneel, crouch, crawl, or stoop. (R. 387-388). Plaintiff was opined to be limited to only occasionally being able to reach, handle, finger, and feel. (R. 388). According to Dr. Pumpelly, Plaintiff lacked bilateral manual dexterity but could use her hands, fingers, and arms more than minimally. (R. 389). Dr. Pumpelly asserted that Plaintiff was to avoid all exposure to extreme heat, extreme cold, and hazards while avoiding even moderate exposure to wetness, humidity, noise, fumes, and gasses. (Id.). In the decision, the ALJ acknowledges that this Medical Source Statement indicates that Plaintiff had a less than sedentary residual functional capacity on December 20, 2006. However, the ALJ emphasized that this statement was conducted nearly one year after the date last insured of December 31, 2005, and that the statement does not allege that Plaintiff was disabled prior to that date. (R. 23). The ALJ further noted that Dr. Pumpelly rarely saw Plaintiff. The record shows that Plaintiff was usually seen by Board Certified Advanced Practice Registered Nurses, or APRN/BC—as opposed to Dr. Pumpelly—and usually for problems other than rheumatoid arthritis or osteoarthritis. (R. 239-250, 352-360). Plaintiff notes that Dr. Pumpelly later opined that Plaintiff was disabled prior to the date last insured. (R. 391, 425). However, this is inconsistent with the medical record reports of only mild or benign pain or impairment prior to that date. (R. 197, 200, 218, 252, 391). Because Dr. Pumpelly's report was not relevant to the time period in question, because Dr. Pumpelly rarely saw Plaintiff about the disabling condition, and because Dr. Pumpelly's later opinion is inconsistent with the record, the ALJ concluded that Dr. Pumpelly's opinion

should be discounted. The ALJ's conclusion is supported by substantial evidence from the record and is justified.

2.     **ALJ's Letter Sent to Dr. Galea.**

The Plaintiff contends that under HALLEX 1-2-7-30, the ALJ improperly failed to proffer the letter sent to Dr. Galea. (Doc. No. 16, p. 21-23). HALLEX 1-2-7-30 states that the ALJ must proffer all posthearing evidence unless certain criteria are met which are not applicable here. (Doc. No. 16-1, p. 1). On December 7, 2007, the ALJ sent a letter to Dr. Galea seeking clarification of his medical assessment. (R. 191). However, the letter was not answered and no new evidence was produced. Since, HALLEX 1-2-7-30 applies only to new evidence, and no new evidence was produced, the ALJ did not err in failing to proffer the letter at issue.

Plaintiff further contends that the ALJ erred in relying on Dr. Galea's failure to respond as justification for discounting Dr. Galea's opinion. (Doc. No. 16, p. 22-23). The ALJ notes in his decision that non-response to the letter simply lead the ALJ to rely on the evidence in the record in making his determination. (R. 22). The evidence in the record was sufficient to support the ALJ's decision to discount the opinion of Dr. Galea. Because the ALJ did not rely on the non-response, but instead relied on the evidence in the record in making his decision, there is no error concerning the letter sent to Dr. Galea.

3.     **ALJ's Consideration of Plaintiff's Credibility.**

Plaintiff next contends that the ALJ failed, under Social Security Ruling 96-7p, to recognize Plaintiff's persistent efforts to obtain relief as enhancing her credibility. The ALJ concluded that Plaintiff's statements were "not credible to the extent that they are

inconsistent with the residual functional capacity assessment" for the period at issue. (R. 21). The ALJ noted several reasons for discounting the credibility of the Plaintiff. Specifically, the ALJ again noted Plaintiff's functional ability including exercise, previous work experience, and lack of severity in the medical report as discussed above. The ALJ further noted Plaintiff's functional abilities after the date last insured as being inconsistent with her claim of disability. Specifically noting Plaintiff's testimony that until around February 2006, she could walk a "pretty far distance" and that standing did not aggravate any pain. (R. 35-36). Plaintiff also testified that she was able to do "a little bit of housework," and other activities including light laundry, painting, and some crafts. (R. 38). Plaintiff's claim that she was disabled during the period in question is inconsistent with both the medical evidence in the record and with her own testimony. Thus, there is no error in the ALJ's failure to credit the statements given by the Plaintiff.

The ALJ's conclusion, that the Plaintiff was not disabled prior to the date last insured of December 31, 2005, is supported by substantial evidence.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

So **REPORTED** and **RECOMMENDED**, this 3rd day of June, 2010.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE